UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHAUTESE C. SEAY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case Number: 2:10-CV-0584-SLB |
| | ) |
| BAPTIST HEALTH SYSTEM, INC., | ) |
| d/b/a Princeton Baptist Medical Center, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 12.)[1] Plaintiff Shautese C. Seay has sued her former employer, defendant Baptist Health System, Inc., doing business as Princeton Baptist Medical Center, alleging that defendant discriminated against her on the basis of her sex and pregnancy in violation of federal law. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 12), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655(1962) (per curiam)). Nevertheless, the non-moving party "need not be

2

given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II. STATEMENT OF FACTS

Plaintiff began working for defendant on or about October 26, 1998, as a licensed practical nurse [LPN]. (Doc. 17-1 at 1 ¶ 2, 3 ¶ 7.) Beginning January 6, 2008, plaintiff took an educational leave of absence to complete her requirements for a registered nurse [RN] degree. (Doc. 17-1 at 3 ¶ 17.) Plaintiff returned from her education leave on or about July 9, 2008. (*Id.*) From January 6, 2008, to July 9, 2008, is 195 days.

Plaintiff testified that she took another week of leave in September 2008. (Doc. 17-1 at 3 ¶ 10.) Defendant denies it has any record of plaintiff missing any time from work between July 9, 2008, and November 16, 2008. (*See* doc. 21 at 2.)[2] For purposes of summary judgment, the court will assume plaintiff took leave in September 2008.

---

[2]The court notes that defendants filed additional evidence with its Reply. (*See* doc. 21 at 17-18.) The court does not consider additional evidence submitted by the moving party with its Reply without giving the non-moving party an opportunity to respond. *See Burns v. Gadsden State Community College*, 908 F.2d 1512, 1516 (11th Cir. 1990); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985). The court has not considered defendant's evidence submitted with its Reply.

Sometime before July 9, 2008, plaintiff notified her supervisor, Susan Bria, that she was expecting a baby and that her due date was December 4, 2009. (Doc. 17-1 at 4 ¶ 11.) In October 2008, she submitted a request for maternity leave. (*Id*.) This request was denied because plaintiff had not worked a sufficient number of hours in the preceding year to qualify for leave under the Family and Medical Leave Act [FMLA].[3] On November 7, 2008, Debra Hyle, the Director of Human Resources at Princeton, sent plaintiff a letter, which stated in part:

> Under BHS policy you may request Other Medical Leave. When requesting "Other Medical Leave", you must provide written certification from your health care provider along with the enclosed LOA [leave of absence] request form by November 24, 2008. . . .
>
> Again, if these forms are not received in Human Resources by November 24, 2008, your employment with Princeton Baptist Medical Center will be terminated.

(Doc. 12-2 at 36.)

On Friday, November 14, 2008, plaintiff's physician told her she required an emergency C-section; she was admitted to the hospital on Sunday, November 16, 2008. (Doc. 17-1 at 4 ¶ 13.) Plaintiff notified defendant on her need for the C-section on November 14, 2008. (*Id.*)

---

[3]Under the FMLA, "An eligible employee is an employee who has worked for the employer for twelve months and for at least 1,250 hours in the preceding year." *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1250 (11th Cir. 2004)(citing 29 U.S.C. § 2611).

On November 19, 2008, Hyle notified plaintiff she was terminated. (*Id*.) Hyle's letter to plaintiff stated:

> This is a follow up to the letter mailed to you on November 7, 2008. After further review, [our] records show that you do not qualify for Other Medical Leave due to your Educational Leave from January 2008 until July 2008. The policy states that the total leave time cannot exceed a total of six months. Because your leave time has already exceeded six months, your employment with Princeton Baptist Medical Center will be terminated effective November 21, 2008. You may apply for positions at Princeton and[,] if hired within 90 days of termination, you will be reinstated with your original date of hire.

(Doc. 12-2 at 38.)

Plaintiff was released from the hospital on November 21, 2008. (Doc. 17-1 at 5 ¶ 14.) She received Hyle's letter when she returned home. (*Id*.) At this time, plaintiff had missed 3 days/36 hours of work. (*Id*. ¶ 15 and n.1) According to her paycheck stub, plaintiff had accrued 27.1 ETO [ Earned Time Off] hours and 33.2 PIB [Personal Illness Bank] hours. (*Id*. ¶ 15.)

Plaintiff submitted a leave request on November 24, 2008, requesting maternity leave from November 16, 2008, until January 5, 2009. (Doc. 12-2 at 43.) The Leave of Absence Request form contains the following language:

> I understand that ***an employee who is off work for a total of six (6) months for Personal, Education, Medical, Workers' Compensation illness/injury, FMLA, or other approved leave will be terminated at the end of the six month leave period***, and that there is no guarantee of employment from any type of leave, except as defined in the FMLA guidelines.
>
> I understand that at the end of my Leave of Absence that I may apply for open positions but that there is no guarantee of placement to a position. I understand that if placement is not possible (excluding FMLA), my

5

>employment will be terminated. . . . If I wish to work at BHS, it is my responsibility to apply for job opportunities within the system and should re-employment occur within 90 days of termination, I will be reinstated with my original date of hire. . . .

(Doc. 12-2 at 43 [emphasis added].) Plaintiff was not given leave or rehired by defendant.

She testified that she sought re-employment after her termination but that defendant had no positions available on-line. (Doc. 17-1 at 6 ¶¶ 18, 20.) According to plaintiff's testimony, Bria told her the only available position was a night-shift position that plaintiff could not take because of her childcare needs. (*Id* at 4 ¶ 11, 6 ¶ 19.) Hyle testified that defendant had over 60 nursing positions available during the three months following plaintiff's termination. (12-2 ¶ 15.) However, for purposes of summary judgment, the court assumes only one night-shift nursing position was available during this time.

Defendant's Employee Handbook contains a section entitled "Time-Off Benefits." (Doc. 17-2.) This section contains defendant's policies regarding Earned Time Off (ETO), Personal Illness Bank (PIB), Bereavement Leave, Civic Responsibilities Leave, Family and Medical Leave [FMLA], Other Medical Leave, and Other Leaves of Absences. (*Id*. 1-6.) The last sentence of this section states, "Except for military leave, anyone on leave for more than six (6) months will be terminated." (*Id*. at 6.) According to the Handbook, PIB "is used when employees miss five or more consecutive work days or 40 hours total when those hours/days off are related to the same injury/illness of the employee . . . . Payment for the first 40 hours employees are absent must come from the ETO account or be taken without pay." (*Id*. at 3.)

Plaintiff alleges that she "was terminated because [she] inquired about maternity leave under Baptist Princeton's policies." (Doc. 17-1 at 5-6 ¶ 17.) On or about April 8, 2009, plaintiff filed a Charge of Discrimination with the EEOC, alleging defendant had terminated her because of her sex. (Doc. 12-1 at 2.) On December 23, 2009, the EEOC sent plaintiff at right to sue letter, and she filed suit in this court on March 19, 2009. In her Complaint plaintiff alleges:

> 14. Plaintiff was wilfully and maliciously discriminated against by the defendant on the basis of her sex and her status as a pregnant female with respect to the terms, conditions, and privileges of her employment.
>
> 15. Plaintiff was pregnant at the time she was terminated and a member of a class of persons protected by Title VII. Plaintiff was qualified for the RN position she was holding at the time she was terminated.
>
> 16. Baptist is prohibited from discriminating against Plaintiff because of her pregnancy. Baptist is required by law to treat women affected by pregnancy or related medical conditions the same for all employment related purposes. 42 U.S.C. § 2000e(k). Nevertheless, Plaintiff was terminated based on her sex and her pregnancy.
>
> 17. Baptist's asserted reason for terminating Plaintiff, is a pretext for discrimination. Under the policy regarding leaves of absence, Plaintiff had not exceeded the six (6) month personal leave period at the time she was terminated. Nevertheless, Baptist is precluded from asserting this reason as the basis for Plaintiff's termination based on administrative findings that the reason was false.

(Doc. 1 ¶¶ 14-17.)

### III. DISCUSSION

In its Motion for Summary Judgment, defendant asks this court to dismiss plaintiff's Complaint because –

> 3. Plaintiff was terminated after she exhausted the maximum of six (6) months of leave available under BHS' leave policies.
>
> 4. Plaintiff fails to establish a *prima facie* case of pregnancy discrimination, because Plaintiff does not even allege in her Complaint or otherwise provide any evidence whatsoever that any male and/or non-pregnant employee was treated more favorably than she was treated. See Complaint. Indeed, in her sworn EEOC Charge, Plaintiff states she was not aware of how others were treated. . . .
>
> 5. Plaintiff also fails to rebut Defendant's legitimate, nondiscriminatory reason for her discharge, the employment decision at issue in this matter.

(Doc. 12 ¶¶ 3-5.)

Plaintiff claims that defendant terminated her in violation of the Pregnancy Discrimination Act ("PDA"), which provides:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise. . . .

42 U.S.C. § 2000e(k). In this circuit, "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000). "In proving [a sex] discrimination claim, a plaintiff can establish a prima facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) for circumstantial

evidence." *Damon v. Fleming Supermarkets Of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)(citing *Carter v. City of Miami*, 870 F.2d 578, 581(11th Cir.1989)).

> A plaintiff may establish a prima facie case of discrimination through circumstantial evidence by proving that (1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). However, a plaintiff may establish a prima facie case of pregnancy discrimination without identifying "specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her." *Armindo*, 209 F.3d at 1321 (citing *Byrd v. Lakeshore Hospital*, 30 F.3d 1380, 1383 (11th Cir. 1994)).

Plaintiff contends she can establish a prima facie case of pregnancy discrimination by showing that defendant terminated her in violation of its own policy. However, the record does not support plaintiff's contentions.

## A.  LEAVE POLICY

Defendant contends that its policy is to terminate any employee who takes six months off within a year. Plaintiff argues:

> (1) the policy does not state that all of the leave time for any type of leave of absence is added together in determining leave eligib[ility]; and (2) the policies regarding other types of leave, excluding FMLA, do not state that a backward rolling twelve(12) month period is used [to] determine leave eligibility.

(Doc. 16 at 23.)[4]

### 1. Combining Different Types of Leaves

Plaintiff contends that the defendant's leave policy does not require that all different types of leave be added together to determine whether an employee is eligible for time off; she contends "employees [are] entitled to no more than 6 months for any one leave of absence." (Doc. 16 at 24.) The court disagrees and finds that, as a matter of law, defendant's leave policy – as set forth in its Employee Handbook, Leave of Absence (and FMLA) policy, and Leave of Absence Request form – is to combine all absences to determine whether an employee has exceeded six months of leave.

Defendant's Employee Handbook states, "Except for military leave, anyone on leave for more than six (6) months will be terminated." (Doc. 17-2 at 6.) This sentence is separated from the preceding paragraphs, which describe the categories of employee leaves of absence. As written, the limitation of leave to six months applies to all categories of leave set forth in the Time-Off Benefits section of the Employee Handbook.

Also, Defendant's Leave of Absence (and FMLA) policy, contains a six-month limit on employee absences; it states:

> In addition to those legally-mandated times away from the work place that an employer must give an employee (i.e. jury duty, military duty), Baptist Health System (BHS) has made provisions for additional employee leaves of absence. ***Total leave*** including FMLA, other medical leave, personal leave, and other

---

[4]The page number refers to the page number assigned by the court's electronic filing system.

> extended leaves (excluding Military Leave) ***can not*** [sic] ***exceed 6 months***.
>
> . . .
>
> . . .
>
> An employee who is off work for a total of six (6) months for personal, education, medical, workers' compensation injury/illness, or other leave will be terminated at the end of the six (6) month period. For those leaves with no guarantee of re-employment, in the event placement is not possible, employment will be terminated.

(Doc. 12-2 at 14 [emphasis added].)

The Leave of Absence Request form, which plaintiff completed on or about November 24, 2008, states:

> I understand that an employee who is off work for a ***total*** of six (6) months for Personal, Educational, Medical, Workers' Compensation illness/injury, FMLA, or other approved leave will be terminated at the end of the six month leave period, and that there is no guarantee of employment from any type of leave, except as defined in the FMLA guidelines.

(*Id*. at 43 [emphasis added].)

Without question, defendant's policy limits an employee to a total of six months of leave regardless of the type of leave. Plaintiff's contention that the different types of leave and leave taken at different times were not to be combined is not supported by anything in the record. The clear import of defendant's policy, as set forth above, is to limit an employee to a total of six months of leave. If an employee is unable to work – for whatever reason – after taking six months of leave, that employee is terminated. However, an employee terminated for excessive leave may reapply for work when capable of returning, and, if rehired within 90 days of termination, is reinstated with accumulated seniority.

Plaintiff admits that she had exceeded a total of six months of leave at the time of her termination. Therefore, her termination was not in violation of defendant's leave policy.

### 2. Accumulated ETO and PIB

Plaintiff contends that she "was terminated while she was absent delivering her baby, when she had ETO and PIB (sick leave and personal leave) available to cover her absences." (Doc. 16 at 20 [citing doc. 17-1 at 5 ¶ 15].) Plaintiff testified that she was terminated despite the fact that she "had accumulated 27.1 ETO hours and 33.2 PIB hours," (doc. 17-1 at 5 ¶ 15), a total of 60.3 hours, and she had been absent 36 hours or less.

The court finds plaintiff's termination for excessive leave is not inconsistent with her accrued ETO and PIB hours. Defendant's time off policy includes the accrual of ETO and PIB hours, which allow an employee on leave to receive pay under certain circumstances. Even though an employee may have hours in these accounts, approval of leave is not assured. ETO hours can be used only with the approval of the employee's supervisor. (Doc. 17-2 at 2 ["ETO eligible employees will use accrued ETO for all approved absences from work. When accrued ETO is exhausted, approved time off can be taken without pay."].) PIB hours can be used only after an employee is away from work for 40 hours or five consecutive days because of an illness or injury. (*Id*. at 3.) Eligibility or approval for leave is separate from the availability of ETO or PIB benefits to pay the employee on leave. (*See* doc. 17-2 at 3 ["There is no payout of PIB for employees who become ineligible for PIB benefits or who terminate from Baptist Health Systems."].)

The court finds that the existence of PIB and ETO hours does not support a finding that plaintiff was eligible for leave associated with her pregnancy.

**3. Rolling Twelve Month Period**

Plaintiff argues:

> Hyle has testified in her declaration that she,
>
> consistently used a backward rolling twelve (12) month period, beginning at the date the leave is requested, as stated in the Baptist Employee Handbook Family and Medical Leave policy and the Baptist Leave of Absence (and FMLA) policy, to determine whether an employee is eligible for leave or has exhausted their leave.
>
> [(Doc. 12-2 at 2 ¶ 3.)] However, the only mention of a "backward rolling twelve-month period" is in the **FMLA policy** language, as required by the statute. [(Doc. 12-2 at 14; doc. 17-2 at 4.)]

(Doc. 16 at 24 [emphasis in original].)

Plaintiff is correct that the only mention of a "backward rolling" calculation in defendant's policy is in defendant's FMLA policy. However, whether the year is calculated as the preceding 12 months or a calendar year, plaintiff exceeded six months of leave during the year – calendar or backward rolling – preceding her emergency C-section.

Based on the foregoing the court finds that plaintiff has not established that her termination violated defendant's leave policy regardless of whether a year is deemed to be a calendar year or a "backward rolling" year.

13

**B. NON-PREGNANCY LEAVE EXCEEDING SIX MONTHS**

Plaintiff argues:

> Even if the Court accepts the Defendant's fabricated limitations, Defendant did not enforce this unannounced policy when Plaintiff earlier requested leave for non-pregnancy related reasons.
>
> It is undisputed that Plaintiff took six (6) months of educational leave from January 2008 through July 2008. [(Doc. 17-1 at 3 ¶ 7.)] According to the Defendant's new limitations, Plaintiff was not entitled to any additional leave within the 12-month period. [(Doc. 12-2 at 4 ¶ 7, 4-5 ¶ 12.)] However, it is undisputed that Plaintiff had taken a week of vacation in March 2007. [(Doc. 17-1 at 3 ¶ 10.)] Therefore, according to Hyle's policy, Plaintiff should not have been eligible for the 6-month educational leave in January of 2008. Nevertheless, the educational leave was approved. [(Doc. 12-2 at 32.)]
>
> Furthermore, in September of 2008, Plaintiff took a week off to take her RN licensing board examination. [(Doc. 17-1 at 3 ¶ 9.)] This non-medical leave was allowed despite the fact that Plaintiff had already taken six months of educational leave less than 12 months before. Therefore, the Defendant's allowed Plaintiff to take leave beyond the 6 months of educational leave for non-pregnancy related reasons, but terminated Plaintiff for inquiring about maternity leave. This is clearly a violation of the Pregnancy Discrimination Act.

(Doc. 16 at 25-26.)

**1. March 2007 Vacation**

Whether measured as a calendar year or the preceding twelve months, plaintiff's March 2007 vacation did not put her over the defendant's six-month limit on leave. If measured as leave in a calendar year, the 2007 vacation would not be combined with the education leave in 2008. If leave is calculated as of the preceding twelve months, plaintiff would have taken approximately three months of educational leave, give or take a week, from

14

March 2007 until March 2008. Therefore, the court finds that no inference of disparate treatment arises from the fact that plaintiff was approved for educational leave beginning January 2008, despite the fact that she had taken a vacation in March 2007.

### 2. September 2008 Leave

Plaintiff contends that she was given leave to take the nursing board examination; defendant contends that plaintiff's personnel file contains no indication that she was given additional time off. Even if the court assumes that defendant knowingly allowed plaintiff additional time off to take the nursing board examination, this fact alone is not sufficient to support a finding that defendant "violated its own policy in terminating" plaintiff in November. *See Armindo*, 209 F.3d at 1321.

Based on the foregoing, the court finds that plaintiff cannot establish a prima facie case of pregnancy discrimination. The court pretermits discussion of whether defendant's articulated reason for plaintiff's termination was pretextual.[5] Defendant's Motion for Summary Judgment will be granted and plaintiff's claim will be dismissed.

---

[5] However, the court briefly notes that plaintiff has failed to rebut defendant's legitimate, non-discriminatory reason for plaintiff's termination, that being plaintiff's violation of defendant's leave of absence policy.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment, (doc. 12), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 16th day of March, 2012.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE